UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GABRIEL MOMBRUN,

                        Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, ANNA VAYSMAN, NEW YORK CITY CONFLICTS OF INTEREST BOARD, ANITA M. ARMSTRONG, JOHN AND JANE DOES 1-10, AND ABC CORPORATIONS 1-10,

                        Defendants.

24-CV-5389-LTS

---

MEMORANDUM OPINION AND ORDER

Gabriel Mombrun ("Mombrun" or "Plaintiff") brings this action against named Defendants, New York City Department of Housing Preservation and Development ("HPD") and New York City Conflicts of Interest Board ("COIB"),[1] as well as Anna Vaysman ("Vaysman"), Anita Armstrong ("Armstrong"), and unnamed John and Jane Does and unidentified corporations (together, "Defendants"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., the New York Labor Law, N.Y. LAB. LAW § 190 et seq., § 650 et seq., and

---

[1] As Defendants correctly argue, New York law requires that "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." (See docket entry no. 21 ("Def. Mem.") at 5-6.) Plaintiff concedes that naming HPD and COIB as Defendants in this action was erroneous and has proposed changes to the case caption to rectify that mistake in his proposed Second Amended Complaint (see docket entry no. 28-1 (the "Proposed Amended Complaint" or "PAC")). The Court, therefore, construes this action as being brought against New York City, and orders that the case caption be amended to reflect the correctly named Defendant, the City of New York. See Ogunbayo v. Montego Med. Consulting P.C., No. 11-CV-4047, 2012 WL 6621290, at *9 n.16 (E.D.N.Y. Sept. 18, 2012) ("Should plaintiff's case be allowed to proceed, she should amend her Complaint to name the City of New York as a defendant.").

claims for unjust enrichment, fraudulent concealment, breach of contract, and defamation.[2] (Docket entry no. 19 (the "Amended Complaint") or ("AC").)  The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367.

Pending before the Court is Defendants' motion to dismiss the AC for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Docket entry no. 20 (the "MTD").)  Plaintiff has opposed the MTD and has moved, in the alternative, for leave to further amend the Amended Complaint.  (Docket entry no. 28 (the "Motion to Amend" or "MTA"); see also docket entry no. 24 ("Pl. Mem.").)  The Court has considered carefully the parties' submissions and, for the following reasons, grants in part and denies in part the MTD, and denies Plaintiff's MTA as futile.

BACKGROUND

<u>Factual Background</u>

Unless otherwise indicated, the following allegations are taken from the Amended Complaint, all well-pleaded allegations of which are presumed true for the purposes of this motion.

Mombrun is a New York City resident and a former employee of HPD.[3]  (AC ¶¶ 2, 24.)  HPD and COIB are agencies of the City of New York.  (Id. ¶¶ 3, 5.)  Vaysman is an

---

[2]  Despite numerous references throughout the Amended Complaint to the New York City Human Rights Law ("NYCHRL") and the New York State Human Rights Law ("NYSHRL"), Plaintiff does not assert any claims under either statute, as he concedes in his opposition brief.  (See generally AC; docket entry no. 24 ("Pl. Mem.") at 8, 16.)

[3]  In the AC, Plaintiff alleges, "[a]t all relevant times hereto, the Defendants collectively are Mr. Mombruns' 'employer,' as that term is defined under . . . [New York Labor Law], and the FLSA."  (Id. ¶ 10.)  In his opposition brief, however, Mr. Mombrun appears to concede that HPD was his only employer, and explicitly concedes that his employment-related claims were asserted against HPD alone.  (Pl. Mem. at 8.)

Assistant Commissioner for Human Resources at HPD. (Id. ¶ 5.) Armstrong is a "supervising attorney for the discretionary revocation of the New York City Taxi & Limousine Commission." (Id. ¶ 6.)

Starting in 2010, Mombrun began working at HPD as a "Hearing Representative," a role he held until 2013. (Id. ¶¶ 25(c), 29.) Around April 2013, Plaintiff obtained a position as a Project Manager for the NYC Housing Lottery Unit ("HLU"), where he would routinely be required to work 12 to 15-hour days and "was often not compensated for his time." (Id. ¶¶ 31, 34.) Due to years of understaffing at HLU, these long working hours were mandatory. (Id. ¶ 35.) For example, Plaintiff would often be required to work a full office day and then "travel to do presentations after hours in the Bronx, Queens, Staten Island, Harlem, and Brooklyn for HPD housing lotteries." (Id. ¶¶ 80, 85.) In a 7-day work week, Plaintiff worked an average of 90 to 112 hours but was only paid for 40 hours of work per week. (Id. ¶ 86; see also id. at 10-25 (chart of Mombrun's "estimated hours worked" from February 16, 2018, to November 23, 2019, estimating that Plaintiff worked 16 hours every single day but was only paid for 8 hours, and calculating an approximate amount of lost wages totaling almost $100,000).) Plaintiff was also required to work in the field, using his personal laptop and hard drives and incurring personal expenses from traveling to different boroughs without reimbursement. (Id. ¶ 87.) Plaintiff remained in this role until sometime around October or November 2019. (Id. ¶¶ 25(d), 55.)

In January 2019, Plaintiff was interviewed by the Department of Investigation ("DOI") regarding "tickets found on the Plaintiff's work computer," and was "questioned . . . about numerous emails matching the names of the Plaintiff's colleagues." (Id. ¶¶ 48, 50.) Plaintiff does not allege more specific details regarding the nature of this investigation, the alleged ticketing scheme found on his work computer, or the content of the emails. (See

generally id.)  At the time of his DOI interview, Plaintiff denied any wrongdoing and purportedly told the investigators that "he was not actively running a ticket company.  The tickets found on his computer were season tickets, which he purchased for personal use with a group of friends."  (Id. ¶ 51.)  The stress of the investigation caused Plaintiff to take a one-year leave of absence from HPD beginning around October 2019 and lasting until October 2020.  (Id. ¶ 55.)

Sometime prior to October 2020, Plaintiff's supervisor, Shatara Pell, opened an official disciplinary case into Plaintiff's activity based on the event tickets found on his computer.  (Id. ¶¶ 56-57.)  Plaintiff alleges that the disciplinary case was weaponized against him because he had a bad working relationship with Pell.  (Id. ¶¶ 58-59.)  Eventually, DOI closed the investigation and recommended that HPD take disciplinary action; Plaintiff was subsequently "suspended for one month without pay and served with a disciplinary case."  (Id. ¶¶ 62-63.)  Following his one-month suspension, Plaintiff returned to HPD in November 2020 and was reassigned to the Property Registration Unit ("PRU"), where he worked until May 2021.  (Id. ¶¶ 65, 69.)  In May 2021, he was reassigned to the Mail Room.  (Id. ¶ 69.)

After his return from suspension, the hearings and investigations into Plaintiff's behavior seemingly continued.  (Id. ¶¶ 71-72.)  In April 2022, Defendant Vaysman allegedly offered Plaintiff a deal to resign from HPD in exchange for DOI dropping all further investigations and proceedings against him.  (Id. ¶¶ 71-72.)  Plaintiff accepted the offer and resigned.  (Id. ¶ 73.)  After Plaintiff resigned, however, Vaysman "presented him with a deal under terms and conditions he did not agree to" which would have required that he admit he was using HPD equipment to run a private business, and which Plaintiff refused to sign.  (Id. ¶ 75.)  In retaliation for Plaintiff's refusal, Vaysman instructed COIB to begin administrative proceedings against Plaintiff.  (Id. ¶ 76.)  Plaintiff alleges that Defendant Armstrong

"maliciously" prosecuted him during these COIB proceedings by, in relevant part, submitting "fake documents" and defamatory statements from various witnesses deposed and cross examined for the proceedings. (Id. ¶¶ 123-37.) As of the date of the AC, COIB had not adopted a final resolution of the case against Plaintiff, but the administrative law judge, Judge Lee, had issued a July 8, 2024 Report and Recommendation recommending that he be penalized with a fine of $6,500. (Id. at 26 n.1; Pl. Mem. at 18.)

Procedural History

Plaintiff initiated this action on July 9, 2024, in the Eastern District of New York. It was subsequently transferred to the Southern District on July 17, 2024, and assigned to Judge Vernon S. Broderick. (Docket entry nos. 1, 8.) On October 3, 2024, Plaintiff amended the Complaint, redacting certain confidential material, with the consent of defense counsel. (AC.) On October 15, 2024, Defendants timely moved to dismiss the Amended Complaint. (MTD.) Judge Broderick granted Plaintiff's request for an extension of time to oppose the MTD, setting a new deadline of November 2, 2024, for Plaintiff's response. (Docket entry no. 23.) Plaintiff failed to file his opposition until November 11, 2024. (Pl. Mem.) In his brief, Plaintiff opposed the MTD in part and requested, in the alternative, leave to file a Second Amended Complaint ("SAC") to clarify various issues. (Id.) On November 12, 2024, Judge Broderick directed Plaintiff to file a proposed SAC by November 19, 2024, and directed Defendants to indicate whether they consented to the proposed amendment. (Docket entry no. 26.) Plaintiff failed to file a proposed SAC by the deadline, and, on November 21, 2024, Defendants filed a letter motion in opposition to amendment, citing Plaintiff's failure to file timely and futility. (Docket entry no. 27 ("Def. Opp. Ltr.").) On November 25, 2024, Plaintiff filed a letter again requesting leave to amend, along with a proposed SAC. (Docket entry nos. 28, 28-1 (the "Proposed

Amended Complaint" or "PAC").)  On December 4, 2024, this case was transferred to the undersigned.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) permits a party to bring a pre-answer motion to dismiss a complaint on the grounds that it fails to state a claim upon which relief may be granted.  To survive a motion to dismiss for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).  In deciding a Rule 12(b)(6) motion to dismiss, the Court must "draw all reasonable inferences in [p]laintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014) (citation omitted).

### Federal Claims

Plaintiff's sole federal claims in this action arise under the FLSA and assert claims for unpaid wages and overtime wages, pursuant to 29 U.S.C. section 201 et seq. (AC ¶¶ 164-84.)  Plaintiff asserts that he is entitled to recovery under the FLSA for his lost wages and unpaid overtime accrued since "the beginning of his employment at HPD."  (Id. ¶ 191.)  Plaintiff alleges that he worked at HPD from August 2010 until he resigned in April 2022.  (Id. ¶ 25.)

Despite these conclusory assertions suggesting that Plaintiff's FLSA claims span the entirety of his employment with HPD, Plaintiff only specifically alleges that he was not compensated for his overtime work and was not paid his full wages during his employment with the Housing Lottery Unit, from April 2013 until his one-year leave of absence in October 2019 and his subsequent transfer to the Property Registration Unit in November 2020. (Id. ¶¶ 65, 69.) Plaintiff alleges no details of his work hours, assignments, or wages during his employment as a Hearing Representative from 2010 to 2013, or from his time in the PRU or the Mail Room, after November 2020. (See generally id.) The allegations of the Amended Complaint only support a plausible inference that Mombrun was forced to work overtime during his time at the HLU due to that specific unit's "years of understaffing" and specifically in connection with HLU assignments such as hosting housing lottery events in the late evenings. (See, e.g., id. ¶¶ 80, 85; see also id. at 10-25 (chart of lost wages from February 2018 to November 2019).) Therefore, to the extent that Plaintiff attempts to assert that his FLSA claims encompass the entirety of his employment with HPD, the Court finds that he has only alleged sufficient factual allegations to support a plausible inference that his FLSA rights were violated during his HLU employment from April 2013 to October 2019.

Defendants assert that Plaintiff's FLSA claims accrued during his employment in the HLU fail because, inter alia, they are time barred. (Def. Mem. at 11-12.) "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." Ellul v. Congregation of Christian Bros., 774 F.3d 791, 789 n.12 (2d Cir. 2014) (citation omitted); see also Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of

limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."). Violations of the FLSA are subject to a three-year statute of limitations if they are committed "willfully" and a two-year statute of limitations otherwise. See 29 U.S.C. § 255(a). Plaintiff initiated this action on July 9, 2024. (Docket entry no. 1.) Even if Plaintiff has alleged facts supporting a plausible inference that HPD violated the FLSA willfully, the only timely claims he could assert would be those claims that accrued after July 9, 2021. Plaintiff has alleged that he stopped working in the HLU in November 2020. (Id. ¶¶ 65, 69.) Therefore, the Court finds, based on the face of the Amended Complaint, that Plaintiff's FLSA claims arising from his HLU employment are untimely.

Plaintiff argues that his FLSA claims should still be considered timely because he is entitled to equitable tolling of the statute of limitations. (AC ¶ 191; MTA at 3.) "[T]he doctrine of equitable tolling applies only in rare and exceptional circumstances, where a party has been prevented in some extraordinary way from exercising his rights." Francis v. Blaikie Grp., 372 F. Supp. 2d 741, 747 (S.D.N.Y. 2005) (internal quotation marks and citation omitted). When determining whether to apply the equitable tolling doctrine, "a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Id. (quoting Zerilli–Edelglass v. N.Y.C. Trans. Auth., 333 F.3d 74, 80-81 (2d Cir. 2003)). Generally, the Second Circuit has found sufficiently "extraordinary" circumstances when "the plaintiff did not know of his or her claim due to misleading action by the defendant." Simmons v. Terrace Healthcare Ctr., Inc., No. 01-CV-3531-RCC, 2004 WL 555708, at *7 (S.D.N.Y. Mar. 19, 2004) (citing Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 24 (2d Cir. 1985)). Plaintiff bears the burden of demonstrating that

equitable tolling is appropriate, Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005), and must still "exercise reasonable care and diligence during the statutory limitation period." Simmons, 2004 WL 555708, at *7 (citing Dodds v. Signa Secs., Inc., 12 F.3d 346, 350 (2d Cir. 1993)).

    Taking all of Plaintiff's well-plead factual allegations as true, and drawing plausible inferences in his favor, the Court concludes that Plaintiff has sufficiently alleged that he was unaware of his right to recovery during the statutory time period because of Defendants' purposeful concealment of his rights under the FLSA. First, Plaintiff alleges that Defendants failed to provide the required notices of his rights under the FLSA in any of his employment documents or wage statements. (AC ¶¶ 89, 186-91.) "The FLSA and analogous state laws require employers to post notices explaining wage and hour requirements and the failure to do so is an important factor in determining the propriety of equitable tolling." Upadhyay v. Sethi, 848 F. Supp. 2d 439, 445 (S.D.N.Y. 2012) (internal citations omitted); see also Veltri v. Building Serv. 32B-J Pension Fund, 393 F.3d 318, 324 (2d Cir. 2004) ("[F]ailure to comply with the regulatory obligation to disclose the existence of a cause of action . . . is the type of concealment that entitles plaintiff to equitable tolling of the statute of limitations."); Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 259-60 (S.D.N.Y. 2008) (finding equitable tolling appropriate when defendants "did not comply with [the FLSA's] notice requirement, and made no effort to provide any other form of notice to the plaintiffs about their rights and the requirements of the FLSA"). While this failure to provide notice is not "by itself" sufficient to establish equitable tolling, Upadhyay, 848 F. Supp. 2d at 445, Plaintiff has also alleged that he lacked actual knowledge of his cause of action until he heard the OATH testimony of Victor Hernandez. (AC ¶¶ 89, 191.) Indeed, Plaintiff alleges that he had to "beg and plead" for his supervisors to pay him for his time and expenses and was simply told that HPD "did not have the resources to compensate him, but

the work had to be done." (Id. ¶ 89.) Recognizing that the doctrine of equitable tolling is a "highly factual issue that depends on what and when a plaintiff knew or should have known," the Court finds that Plaintiff has adequately alleged, at the pleading stage, facts supporting a plausible inference that he may be entitled to equitable tolling of the statute of limitations for his FLSA claims. Knox v. John Varvatos Ent., Inc., 282 F. Supp. 3d 644, 658 (S.D.N.Y. 2017) (internal citation omitted); see also Lama v. Malik, 58 F. Supp. 3d 226, 235 (E.D.N.Y. 2014) (denying defendants' motion to dismiss because it was "simply too early to tell if equitable tolling applie[d]" because, at the pleading stage, the court lacks the necessary record to engage in such a fact-intensive inquiry).

Therefore, to the extent that Plaintiff's FLSA claims are premised on employment with HLU, the Defendants' motion to dismiss the Amended Complaint is denied.

### State and Local Claims

#### New York Labor Law

Plaintiff asserts five claims arising under various provisions of Article 6 and Article 19 of the New York Labor Law and their accompanying regulations. (See AC ¶¶ 104-20.) Specifically, Plaintiff asserts claims for violations of (1) the overtime payment provision, N.Y. LAB. LAW § 190 et seq.,[4] (2) the timely payment provision, id. § 191, (3) the spread of hours provision under N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6,[5] (4) the notice and

---

[4] Plaintiff does not identify a specific provision of the New York Labor Law underlying his state cause of action for overtime wages. (See AC.) The Court construes the Amended Complaint as intending to assert a claim arising from Title 12, section 142-2.2 of the New York Codes, Rules and Regulations. N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2 (enacting the overtime and wage protections of Article 19).

[5] The regulation that Plaintiff invokes only applies to restaurants and all-year hotels. No regulation enacting the minimum wage and overtime protections of Article 19 encompasses government employees.

recordkeeping requirements, N.Y. LAB. LAW § 195(1), and (5) the wage statement provision, id. § 195(3).  Defendants move to dismiss all claims arising under the New York Labor Laws as inapplicable to HPD because city agencies are exempt from the coverage of the statute.  (Def. Mem. at 8-9.)  In response, Plaintiff concedes that Article 6 exempts city agencies from the definition of "employers" covered by the statute, but argues, unavailingly, that his claims under Article 19 still prevail because section 651 does not include the same carveout for government agencies under Article 19's definition of covered "employers."  Compare N.Y. LAB. LAW § 190(3) ("'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service.  The term 'employer' shall not include a governmental agency.") (Westlaw through L.2025) with N.Y. LAB. LAW § 651(6) ("'Employer' includes any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer.") (Westlaw through L.2025).  Plaintiff's argument fails, however, because he is not a covered employee under Article 19's definition of "employees."  See id. § 651(5) ("'Employee' includes any individual employed or permitted to work by an employer in any occupation, but shall not include any individual who is employed or permitted to work: . . . (m) by a federal, state, or municipal government or political subdivision thereof.").  For these reasons, each of Plaintiff's New York Labor Law claims fails to state a claim.  All claims arising under Article 6 are inapplicable as asserted against HPD, and all claims arising under Article 19 are unavailable to Plaintiff as an employee of a municipal agency.

    Defendants' motion to dismiss the Amended Complaint is granted with respect to all of Plaintiff's New York state labor law claims.

Unjust Enrichment and Fraudulent Concealment

Next, Plaintiff asserts two common law tort claims against HPD, for unjust enrichment and fraudulent concealment. At the outset, in order to bring a tort action against New York City, the General Municipal Law requires a plaintiff to file a "Notice of Claim," apprising the City of the plaintiff's cause of action. See N.Y. Gen. Mun. Law § 50-e(1)(a). The failure to plead compliance with the Notice of Claim provision is fatal to a plaintiff's tort claims against New York City. See Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 793-94 (2d Cir. 1999) ("Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." (internal quotation marks and citations omitted)). In the Amended Complaint, Plaintiff alleges no information showing that he has satisfied the procedural requirements of Section 50-e and, therefore, the Court must grant Defendants' motion to dismiss those claims.

Defamation and Breach of Contract

Finally, Plaintiff asserts claims for defamation and breach of contract arising from Plaintiff's DOI investigation, suspension, resignation, and COIB proceedings. (AC ¶¶ 121-54; see also Pl. Mem. at 16-21.) Plaintiff asserts that this Court has jurisdiction of these common law claims under the Court's supplemental jurisdiction as authorized under 28 U.S.C. section 1367. (See Pl. Mem. at 7.) The allegations underlying these claims, however, constitute an entirely separate series of events compared to the allegations underlying Plaintiff's federal FLSA claims; the only common nucleus of facts these claims share is Plaintiff's common employer (HPD).

"[S]ubject matter jurisdiction is an unwaivable sine qua non for the exercise of federal judicial power," E.R. Squibb & Sons v. Accident & Cas. Ins. Co., 160 F.3d 925, 929 (2d

Cir. 1998) (citation omitted). "Since the Judicial Improvements Act . . . [courts] have held that disputes are part of the 'same case or controversy' within the meaning of [28 U.S.C.] Section 1367 when they derive from a common nucleus of operative fact." Hamilton Reserve Bank Ltd. v. Democratic Socialist Republic of Sri Lanka, 134 F.4th 73, 79 (2d Cir. 2025). The Second Circuit has "routinely upheld the exercise of pendent jurisdiction where the facts underlying the federal and state claims substantially overlapped, . . . or where presentation of the federal claim necessarily brought the facts underlying the state claim before the court." Lyndonville Sav. Bank & Tr. Co. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000) (collecting cases). Conversely, however, the Court lacks supplemental jurisdiction "when the federal and state claims rest[] on essentially unrelated facts." Id. (collecting cases).

Because Plaintiff's defamation and breach of contract claims rely on events that share no common nucleus of facts with Plaintiff's federal claims, the Court finds no basis to exercise supplemental jurisdiction of the claims and must dismiss them for lack of jurisdiction.

Motion to Amend

Plaintiff has moved, in the alternative, for leave to file a Second Amended Complaint and has tendered, in connection with that motion, a PAC. (MTA; PAC.) Defendants have opposed amendment on the basis of futility and because of Plaintiff's failure to comply with Court-ordered deadlines. (Def. Opp. Ltr.)

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a). Under the discretion of the district court, leave to amend generally will be granted unless: (1) there is evidence of undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies by amendments previously allowed; (2) allowing amendment would cause undue prejudice to the opposing party;

or (3) the amendment would be futile.  See Foman v. Davis, 371 U.S. 178, 182 (1962).  "An amended pleading is futile when, as a matter of law, the proposed complaint would not survive a Rule 12 motion" such as a Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Oppedisano v. Zur, No. 20-CV-5395-VB, 2022 WL 4134436, at *2 (S.D.N.Y. Sept. 12, 2022) (citing Bandler v. Town of Woodstock, 832 F. App'x 733, 735-36 (2d Cir. 2020)).  "A determination that a proposed claim is futile is made under the same standards that govern a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."  Marathon Ashland Petroleum LLC v. Equili Co., L.P., No. 00-CV-2935-JSM-KNF, 2002 WL 662900, at *5 (S.D.N.Y. Apr. 23, 2002).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  If the proposed amended complaint would be subject to dismissal under Rule 12(b)(6), the Court should refuse to grant leave.  Bank of New York v. Sasson, 786 F. Supp. 349, 352 (S.D.N.Y. 1992).

As discussed above, the Court grants the Defendants' motion insofar as its seeks to dismiss: (1) Plaintiff's FLSA claims accruing from 2010-2013 and November 2020-April 2022 for insufficient factual allegations of any statutory violation during those time periods; (2) Plaintiff's New York Labor Law claims as inapplicable to municipal agencies and employees; (3) Plaintiff's unjust enrichment and fraudulent concealment claims for failure to plead compliance with New York City's Notice of Claim requirement; and (4) Plaintiff's breach of contract and defamation claims for lack of supplemental jurisdiction.  Of these fatally defective claims repeated in the PAC, the PAC only includes new allegations relevant to the Notice of Claim issue.

In the PAC, Plaintiff now alleges that he served Defendants with a Notice of Claim ("Notice") regarding his unjust enrichment and fraudulent concealment claims on or about December 15, 2023, and that he subsequently served Defendants with an updated Notice on November 1, 2024.  (PAC ¶¶ 17-18.)  Under the New York General Municipal Law, a Notice of Claim must be filed "within ninety days after the claim arises."  N.Y. GEN. MUN. LAW § 50-e(1)(a).  Plaintiff's unjust enrichment and fraudulent concealment claims arose during his employment with HLU, before 2019.  Therefore, Plaintiff's alleged Notices were untimely.  The Municipal Law permits such late notices only if a plaintiff makes an application for leave to serve a late Notice of Claim, and such extension can only be granted within the statute of limitations for bringing such claim.  Id. § 50-e(5).  Critically, federal courts lack jurisdiction to grant an application for a late notice of claim.  See id.; Brown v. Metro. Transp. Auth., 717 F. Supp. 257, 260 (S.D.N.Y. 1989) ("Until the state legislature amends § 50–e(7) to include federal trial courts, we have no choice but to dismiss for lack of jurisdiction plaintiff's application to file a late notice of claim or to have his notice of claim deemed timely filed.").  Although Plaintiff indicated in his opposition brief that he intended to seek permission from the New York County Supreme Court for leave to file a late Notice of Claim, he includes no allegations in the PAC that he was granted such permission or even that he did, in fact, make the application.  (See generally PAC.)  Therefore, the Court finds that the proposed amendments of Plaintiff's unjust enrichment and fraudulent concealment claims against the City are futile because Plaintiff again fails to satisfy his burden of pleading compliance with the New York City's Notice of Claim requirement.

For these reasons and those discussed in previous sections of this Memorandum Opinion and Order, the Court denies Plaintiff's proposed amendment entirely for futility.

<u>Leave to File a Renewed Motion to Amend</u>

Although the Court denies Plaintiff's motion to amend for futility, there is a particularly strong preference for allowing further amendment where "the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of its pleading." <u>Allianz Glob. Invs. GmbH v. Bank of Am. Corp.</u>, 473 F. Supp. 3d 361, 365 (S.D.N.Y. 2020); <u>see</u> also <u>Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC</u>, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). Because the Court now clarifies the deficiencies of Plaintiff's fraudulent concealment, unjust enrichment, and FLSA claims, Plaintiff is granted leave to make a renewed motion to amend those claims alleging additional facts demonstrating compliance with the Notice of Claim requirement and/or specific factual allegations demonstrating how HPD violated his rights under the FLSA between 2010-2013 and November 2020-April 2022 (and how claims derived from such periods that may be time barred may nonetheless go forward under the doctrine of equitable tolling). Any such motion to amend must be made within twenty-one days of the entry of this Memorandum Opinion and Order, and must comply with all applicable federal, local, and individual rules. Should Plaintiff fail to file such a motion **within 21 days of the entry of this Memorandum Opinion and Order**, Plaintiff's unjust enrichment, fraudulent concealment, and FLSA claims arising from his non-HLU employment, will be dismissed with prejudice and without further advance notice.

Plaintiff's defamation and breach of contract claims are dismissed without prejudice to litigation in a forum of competent jurisdiction. Should Plaintiff wish to and be able to tender factual allegations that would rectify the deficiencies in the Court's subject matter

jurisdiction of those claims, as identified above, Plaintiff must include any such amended allegations in the proposed SAC within **21 days** of this Memorandum Opinion and Order.

Because the deficiencies in Plaintiff's New York Labor Law claims cannot be cured by amendment, those claims are dismissed with prejudice and without leave to move for further amendment.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is granted in part and denied in part. Plaintiff's FLSA claims are dismissed to the extent that Plaintiff asserts claims arising from his employment as a Hearing Representative from 2010 to 2013 and in the Property Registration Unit and the Mail Room from November 2020 to April 2022. Plaintiff's fraudulent concealment and unjust enrichment claims are dismissed without prejudice to renewal should Plaintiff demonstrate compliance with the Notice of Claim requirements under the New York General Municipal Law. If Plaintiff fails to make a motion for leave to amend these claims **within 21 days of this Memorandum Opinion and Order**, those claims will be dismissed with prejudice and without further advance notice. Any such motion must comply with all applicable federal, local, and individual rules.

Plaintiff's New York Labor Law claims are dismissed with prejudice. Plaintiff's defamation and breach of contract claims are dismissed for lack of subject matter jurisdiction without prejudice to litigation in a forum of competent jurisdiction.

This Memorandum Order resolves docket entry nos. 20 and 27. The Clerk of Court is respectfully directed to amend the case caption to remove the incorrectly named Defendants, the New York City Department of Housing Preservation and Development and New York City Conflicts of Interest Board, and to substitute the correctly named Defendant, the City of New York. This case will be referred to Magistrate Judge Gary Stein for general pretrial management.

      SO ORDERED.

Dated: New York, New York
      June 30, 2025

                                            /s/ Laura Taylor Swain
                                            LAURA TAYLOR SWAIN
                                            Chief United States District Judge